**UNITED STATES OF AMERICA,**
**Plaintiff–Appellant,**

v.

**James S. ANDERSON and Mark**
**D. Anderson, Defendants–**
**Appellees.**

Nos. 99–3891, 99–468.

United States Court of Appeals,
Sixth Circuit.

Feb. 7, 2001.

476

Before MARTIN, Chief Judge; JONES and COLE, Circuit Judges.

PER CURIAM.

The United States appeals the district court's decision to sentence James and Mark Anderson under the guideline for structuring financial transactions to evade reporting requirements, Section 2S1.3, instead of the guideline for money laundering, Section 2S1.1. For the following reasons, we affirm the decision of the district court.

I.

James Anderson and his son Mark owned and operated Central Trux & Parts, a truck salvage yard in Toledo, Ohio. Their business was relatively small before its demise and James and his sons performed the bulk of the physical labor there. Two other employees, including James's daughter-in-law, did the clerical work at the salvage yard. James never completed elementary school and is completely illiterate.

American truck dealers have traditionally done significant business by selling used heavy trucks and parts to Colombian importers. Colombia does not have a substantial rail system and bulk goods are typically shipped by truck instead. Between 1985 and 1994, the Andersons took advantage of this market for Central Trux and sold the company's inventory to Colombian importers.

Their business in Colombia led the Andersons into a tangled web of trade and currency exchange first spun by narcotics traffickers in that country. Eventually, the Andersons pled guilty to money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and laundering the proceeds of unlawful narcotics trafficking, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), among other offenses. James pled guilty to an additional count of income tax evasion, in violation of 26 U.S.C. § 7201. The district court sentenced James to forty-one months' imprisonment and Mark to twenty-one months' imprisonment under Section 2S1.3 of the U.S. Sentencing Guidelines Manual.

## II.

The district court's "application of a guideline to undisputed facts presents a question of law" that we review de novo. *United States v. Clay*, 117 F.3d 317, 319 (6th Cir.1997).

The sentencing court was closely involved with this case, having participated in it from pre-indictment electronic surveillance through the trial and acquittal of a co-defendant. The court was therefore intimately familiar with the Andersons' conduct and what punishment it merited according to the sentencing guidelines. At sentencing, the district court found that the Andersons' situation closely paralleled *United States v. Gamez*, 1 F.Supp.2d 176 (E.D.N.Y.1998), where the defendants were convicted of money laundering conspiracy but sentenced under Section 2S1.3 for structuring financial transactions. In that case, automobile brokers sold cars in the United States to South American drug traffickers who then shipped the cars to Colombia. *See Gamez*, 1 F.Supp.2d at 179, 183 (citing *Koon v. United States*, 518 U.S. 81, 105, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (approving a downward departure where criminal conduct is outside the "heartland" of cases covered by the guideline)).

Three key facts stand out in *Gamez*. First, the defendants operated a lawful business in an apparently lawful way with some legitimate clients. Second, no highly organized enterprise or expansive system reaping large profits for the actors was involved. Finally, the defendants charged fees for their work that were the same as those for fully legal sales of cars, and did not seek a premium in profits because of the illegal connection. *See id.* at 183.

The United States had no objection to the Presentence Investigation Report relied on by the district court. The relatively small scale of the Andersons' business, noted in that report, closely parallels the situation in *Gamez*. The report indicated that the Andersons were unsophisticated businessmen in the day-to-day business of dismantling and selling used trucks and truck parts to many legitimate buyers. It stated that they also sold trucks and parts to Colombian buyers who owned truck salvage yards or acted as brokers for such yards. It noted that the Andersons did not seek the Colombians' business, but those buyers were referred to Central Trux by other dealers in the Toledo area who were unable to satisfy their demand. The district court noted at James Anderson's sentencing hearing that narcotics funds were distantly related to the defendants in both *Gamez* and this case.

The Colombian buyers bought vehicles from many businesses throughout the United States, including three others in the Toledo area. No evidence was presented that the Andersons made any premiums on the sales. In fact, some evidence showed that the buyers drove hard bargains and bought trucks wherever they could get the lowest prices. At first blush, the sales of trucks and truck parts to Colombians might seem to warrant prosecution for money laundering and therefore subject the Andersons to sentencing under Section 2S1.1. However, in the context of the relatively small business the Andersons ran, there was not presented the sort of complex and sensitive case that should be prosecuted as money laundering.

Finally, the Andersons have extremely limited criminal histories. James had no convictions before the ones in this case. Mark's only prior conviction came in 1988 for reckless operation and use of a headlight beam.

These facts suggest that the sentence the district court imposed on the

Andersons was appropriate under the circumstances.

### III.

Accordingly, the decision of the district court is AFFIRMED.